IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARTURO CRUZ | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:22-cv-00090 |
| | § | |
| T-MOBILE USA, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT

Defendant T-Mobile USA, Inc. ("T-Mobile") moves for summary judgment on all of the claims asserted by Arturo Cruz.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| | A. Cruz's Employment History with T-Mobile | 1 |
| | B. T-Mobile Promotes Cruz in Early 2020 | 1 |
| | C. T-Mobile Prohibits Harassing Behavior | 1 |
| | D. Cruz Attends a Work Event in Las Vegas Where Multiple Employees, Including Hispanic Employees, Reported That He Acted Inappropriately | 2 |
| | E. T-Mobile Investigates the Allegations and Concludes that Cruz Engaged In Inappropriate Behavior | 3 |
| | F. Due to Cruz' Behavior, T-Mobile Terminated His Employment | 5 |
| | G. The Company Takes Action to Minimize the Impact of its Decision on Cruz | 5 |
| | H. Cruz Complains About His Firing to Various Company Leaders, But Does Not Allege Discrimination | 6 |
| | I. Cruz Unsuccessfully Attempts to File a Retaliation Claim, then Changes to a Discrimination Claim | 6 |
| | J. Cruz Files this Action, Challenging Only His Firing | 7 |
| III. | SUMMARY JUDGMENT STANDARD | 8 |
| IV. | ARGUMENT AND AUTHORITIES | 9 |
| | A. Standards | 9 |
| | B. Cruz Cannot Establish the Causation Element of His Prima Facie Case | 9 |
| |     1. Cruz has no evidence that T-Mobile always engages in lesser discipline before a dismissal. | 10 |
| |     2. Cruz has no evidence that Beardsley or Nolan discriminated against him. | 10 |
| |     3. Cruz' belief that T-Mobile's investigation could have been more thorough is not evidence of causation. | 11 |
| |     4. Cruz has no evidence of similarly situated employees who were treated better than him. | 12 |

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page ii**

        5.     Cruz' anticipated argument regarding a former HR Representative is irrelevant................................................................................................................ 14

   C.    Cruz Cannot Establish Pretext ................................................................................ 14

V.   CONCLUSION ........................................................................................................................16

## I. INTRODUCTION

T-Mobile promoted Cruz and sent him to a corporate event in Las Vegas as he began his new role. Multiple employees, including other Hispanic employees, reported that he engaged in inappropriate behaviors while there. After T-Mobile interviewed Cruz and he demonstrated a lack of remorse for his behavior, the same person that had promoted Cruz weeks earlier decided to fire him. His color and national origin had nothing to do with that decision, and he has no evidence to the contrary. As such, his claims should be dismissed.

## II. BACKGROUND[1]

**A.   Cruz's Employment History with T-Mobile**

Cruz, who is Hispanic, began working for T-Mobile in 2003. App. 4, 26. During the relevant period, Cruz lived and worked for T-Mobile in Mission, Texas. App. 13. Cruz admits that he did not experience any discrimination in the 17 years he worked for T-Mobile other than, he alleges, the firing that he sues over in this case. App. 26-27.

**B.   T-Mobile Promotes Cruz in Early 2020**

T-Mobile promoted Cruz to the position of Senior Manager, Global Care Management, in early 2020. App. 13, 33, 35, 108-09. Supervisors La Dawn Beardsley and Mark Nolan interviewed Cruz for the position. App. 35, 128. Although he now claims that they discriminated against him just weeks later, Cruz acknowledges that Beardsley and Nolan made the decision to hire him over a "plethora" of other candidates. App. 36, 128. In the new role, Cruz was to report to Beardsley, and to oversee a call center in South America. App. 34.

**C.   T-Mobile Prohibits Harassing Behavior**

T-Mobile has policies in place that prohibit, among other things, unwelcome sexual

---

[1] T-Mobile states the following facts in the light most favorable to Cruz, as it must do for purposes of this motion. It does not necessarily agree with Cruz' rendition of these facts, and reserves the right to challenge them if this matter proceeds.

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 1**

advances or requests for sexual favors or verbal and physical conduct of a sexual nature. App. 28-29, 130. Cruz agrees that it is appropriate to prohibit those actions. App. 29. He further concedes that he was trained on these policies every year. App. 29.

D. **Cruz Attends a Work Event in Las Vegas Where Multiple Employees, Including Hispanic Employees, Reported That He Acted Inappropriately**

In February 2020, shortly after it promoted him, T-Mobile sent Cruz and others to Las Vegas for a Global Care & Customer Service kick-off event. App. 37. The actions that gave rise to this case occurred on the last night of that event. App. 38-39. That evening, Cruz attended a Company-sponsored hockey game, and then moved to a different location (a bar) for continued socializing. App. 39-40.

Cruz drank alcoholic beverages before the hockey game, during the hockey game, and at the post-game event. App. 41-42. These events occurred over four or five hours. App. 42. Cruz originally told HR that he had six to eight alcoholic drinks that evening. App. 131, 71. His handwritten contemporaneous notes likewise reflect that he had "anywhere from 6-8 drinks" that night. App. 126. But at his deposition, Cruz changed his story and said he had just "four to six" alcoholic drinks. App. 42. In any event, Cruz does not blame his behavior that evening on his alcohol consumption, and instead simply denies doing anything inappropriate at all. App. 40-41. But his coworkers said otherwise.

Specifically, a senior manager named Pete Villagran reported that Cruz behaved inappropriately at the event, including standing too close to a female colleague while talking to her, and that Cruz was speaking in a loud and "belligerent" manner with slurred speech. App. 131. Villagran further explained that he had walked Cruz back to his hotel room to get Cruz away from the female colleague. App. 131. Villagran's report was particularly notable, because Cruz had known Villagran "since probably. . . 2002," when they worked together at another employer. App. 44, 23-24. The two were friends and, importantly, for purposes of Cruz' claim, of the same race

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 2**

and national origin. App. 44.

Although he disagrees with some of what Villagran (and later others) said about him, Cruz does not contend that the Company is lying when it says it received complaints about his actions in Las Vegas. App. 24. Moreover, Cruz has confirmed certain aspects of Villagran's account. Specifically, Cruz agrees that shortly after he arrived at the post-game bar (Carnival) Villagran approached him and expressed concern about his behavior. App. 43, 47-48. Cruz says that Villagran told him that he had heard Cruz had been "hitting on . . . la güera" (*i.e.*, on a "white woman"). App. 46-47, 49, 50-51. Cruz explained that Villagran also told him "something along the lines of I've seen people get fired for stuff like this." App. 52; *see also* App. 110-13 (Cruz reporting that Villagran told him "people get fired for these kinds of things and that La Dawn is not going to allow this"). And Cruz agrees that he then left the bar and walked with Villagran back to their hotel. App. 43.

E. **T-Mobile Investigates the Allegations and Concludes that Cruz Engaged In Inappropriate Behavior**

HR Partner Natasha Ewing-Harden investigated Villagran's allegations. App. 131. She interviewed multiple witnesses, and learned that at the event Cruz was visibly intoxicated, stood too close to female colleagues, stared down one female colleague's shirt, licked his lips while gazing up and down at a female employee, and had his hand on a female employee's back while moving it up and down. App. 131. Moreover, one female employee reported that she felt the need to protect another female employee from Cruz, so she interrupted their conversation and pulled the female employee away from him. App. 131. At least three of the people who described inappropriate behavior during the investigation—Pete Villagran, Juan Trujillo, and Juan Longoria—are Hispanic. App. 57-58, 66-67, 131.

As part of her investigation, Ewing-Harden also interviewed Cruz. App. 131, 52, 53, 68. During that interview, Cruz was asked about what happened that evening in Las Vegas. App. 70,

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 3**

131.  Rather than apologize and take responsibility for his actions, Cruz simply denied engaging in any inappropriate behavior. App. 131. That denial was particularly troubling because, as Cruz admits, accountability is a key part of T-Mobile's culture. App. 22-23, 131. And the Company holds leaders such as Cruz to an even higher standard than its non-leaders. App. 33. Importantly, Cruz did not claim during that interview that he thought the allegations against him had been made due to his color or national origin. App. 72, 133.

At his deposition, Cruz says he showed no remorse for his actions because, in his view, T-Mobile "never gave [him] the opportunity to show remorse." App. 21. But that obviously is not true: as noted, T-Mobile told Cruz about the allegations against him and gave him a chance to respond as he saw fit during this meeting. But his response was to deny, rather than to take responsibility for his actions and apologize. App. 131.  Indeed, in handwritten notes he produced which appear to be contemporaneous with the events in question, Cruz wrote "if I could do it again I would have apologized and attempted to repair relationships. . . . I should have done that from the beginning." App. 127.

Cruz also made comments during the interview that the Company found concerning. App. 132.  For example, he said that he would not have hit on a particular employee because he knew she was not "interested in men." App. 132. This is similar to his troubling deposition testimony that he would not have looked down a particular female coworker's shirt because she "[i]s not somebody that [he] would be attracted to at all," and that he would not have looked at another female coworker and licked his lips suggestively because "[she], much like [the other referenced female coworker], would be somebody that [he was] not at all attracted to." App. 62, 65-66.

An additional reason the allegations against him were so troubling was that Cruz' job required international travel, and one of the women who complained about his behavior was scheduled to travel with him in the near future. App. 132, 83-84. Cruz acknowledges that T-Mobile

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 4**

might have concerns about sending someone on international travel with a female subordinate if it had just received the sorts of allegations that it received about him. App. 84. Moreover, to his credit, Cruz concedes that the behavior described by his coworkers was inappropriate. App. 57, 59, 63, 66.

F.  **Due to Cruz' Behavior, T-Mobile Terminated His Employment**

After completing its investigation, T-Mobile decided to terminate Cruz' employment based on the behavior that it believed he engaged in, and his subsequent refusal to take responsibility for that behavior. App. 128-29. Nolan, the person who had promoted Cruz just weeks earlier, made that decision. App. 129. Cruz' national origin and color had nothing to do with that decision. App. 129.

Beardsley, Nolan, and a former HR Representative named Isabel Torres met with Cruz to convey the Company's decision. App. 72, 78, 132. During this call, Cruz was told that the company could no longer trust him, and that his employment would be ending. App. 80. Cruz did not tell anyone during that call that he believed he had been discriminated against. App. 81.

Following Cruz' firing, Villagran began performing his duties. App. 132. He, like Cruz, is Hispanic. App. 44. 132.

G.  **The Company Takes Action to Minimize the Impact of its Decision on Cruz**

Although T-Mobile relieved Cruz of his duties immediately, it specifically set his dismissal date further out so that he would not lose stock awards that were about to vest, and so that he would have an additional month of health benefits. App. 84-86, 132. Moreover, when it learned that his spouse had medical needs that might go unmet following his dismissal if his benefits were to end after that additional month, it voluntarily extended his medical benefits for several months. App. 132.

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 5**

**H.     Cruz Complains About His Firing to Various Company Leaders, But Does Not Allege Discrimination**

After his firing, Cruz sent emails to various people within the Company to complain about the termination decision. App. 87-88. Cruz said he did so to "explain the situation and [his] position" so that he could get reconsidered for reinstatement. App. 88. He further agrees that his goal was to convey all the facts that he was aware of that could lead appropriate company decisionmakers to realize the wrong decision had been made. App. 88-89. But he did not allege that he was the victim of color or national origin discrimination in these emails. App. 93, 96.

For example, Cruz sent an email to the Executive Vice President of Customer Service, Callie Field. App. 89-90, 110-13. In his email, he provided a more in-depth description of what he says happened in Las Vegas than he did when HR first interviewed him. App. 91. But he did not allege that he had been discriminated against.[2] App. 110-13. Cruz also sent an email to then-CEO John Legere and then-COO Michael Sievert. App. 93-95, 114-16. Although he took that opportunity to explain why he thought the Company made the wrong decision, he did not allege that he believed he had been the victim of discrimination. *Id.*

**I.     Cruz Unsuccessfully Attempts to File a Retaliation Claim, then Changes to a Discrimination Claim**

Cruz then submitted what he called a "retaliation complaint" to the TWC. App. 97-98, 117-20. In that document, Cruz did not the check boxes which would indicate discrimination on the basis of national origin. App. 117-20. And his description of the allegedly unlawful actions by T-Mobile only described what he called "retaliat[ory]" actions, and not any discriminatory ones. App. 117-20. Cruz now says it was an "oversight" that he did not allege discrimination in that

---

[2] One of the things Cruz did tell Field in the email was that "[i]n [his] culture, it is common to hug and pat on the back as a way of showing appreciation, building a professional relationship." App. 110-13. He confirmed at his deposition that this reference to "his culture" was a reference to "the Mexican American culture." App. 92-93. This is the only time that anyone mentioned Cruz' race or national origin in any way in connection with the events that resulted in his dismissal. App. 93.

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 6**

document. App. 99.

Perhaps because the "retaliation complaint" did not identify any legally protected activities, the TWC told Cruz that it was "unable to proceed based on the information provided," and asked for additional information about "how the employer's actions taken against [him] were discriminatory based [his] protected class, such as race, sex, disability, age, or religion." App. 121-23, 100. Cruz responded by claiming that white people "[did what he] was accused of and much more." App. 121-23. But he now admits that he cannot specifically identify any such people and, more importantly, that he has no evidence as to whether coworkers complained about those people or, if so, whether those people were disciplined. App. 101-02.

Thereafter, Cruz filed a formal charge in which he abandoned his prior retaliation claim, and switched to a national origin and color discrimination claim. App. 124, 103-04. The TWC eventually issued Cruz a Right to Sue notice without finding that his allegations had merit. App. 125.

### J.     Cruz Files this Action, Challenging Only His Firing

Cruz then filed this lawsuit under Chapter 21 of the Texas Labor Code. Docket No. 1-3. In it, he complains only about his firing. Docket No. 1-3. And he confirmed at his deposition that his firing is the only action he is challenging in this litigation. App. 4-5. For the reasons set out below, his claim has no merit, and the Court should enter summary judgment in T-Mobile's favor.

### III. SUMMARY JUDGMENT STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules [of Civil Procedure] as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"[3] Indeed, Rule 56 "'mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[4]

A movant is entitled to summary judgment if the record establishes "there is no genuine issue as to any material fact."[5] The substantive law will identify which facts are material.[6] Facts are material only if they "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted."[7] A material factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ."[8] "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted . . . ."[9] To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[10]

---

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[4] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Celotex*, 477 U.S. at 322).

[5] FED R. CIV. P. 56(c).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Id*.

[8] *Id*.

[9] *Id*. at 249-50.

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 8**

## IV.  ARGUMENT AND AUTHORITIES

### A.  Standards

In employment discrimination cases under Chapter 21, courts apply the burden-shifting analysis established by the United States Supreme Court.[11] Under this analysis, Cruz has the initial burden of establishing a prima-facie case.[12] To do so, Cruz must show that (1) he is a member of a protected group; (2) he was subject to an adverse employment decision; (3) he was qualified for the position; and (4) similarly situated employees outside his protected group were treated more favorably than him.[13]

If Cruz establishes a prima-facie case, the burden shifts to T-Mobile to articulate a legitimate, nondiscriminatory reason for its actions.[14] This burden is one of production, not persuasion.[15] If T-Mobile satisfies this burden, the burden shifts back to Cruz to show that the reasons T-Mobile offered were not its true reasons, but were a mere pretext for discrimination.[16] Cruz ultimately bears the burden of proving that his color or national origin was a motivating factor in the employment decisions about which he complains.[17]

### B.  Cruz Cannot Establish the Causation Element of His Prima Facie Case

T-Mobile agrees that Cruz is a member of a protected group, that being fired is an adverse employment action, and that Cruz was qualified for the final position he held. T-Mobile denies, however, that Cruz can establish the causation element of his prima facie case.

---

[11] *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

[12] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

[13] *Folorunso v. CVS Pharmacy, Inc.*, 2009 WL 10711872, at *5 (S.D. Tex. Oct. 16, 2009).

[14] *Reeves*, 530 U.S. at 142-43.

[15] *Id*.

[16] *Id*.

[17] *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) ("Under the Texas statute, to establish an unlawful employment practice, [a plaintiff must] prove that discrimination was a motivating factor in the employer's decision") (internal quotation omitted).

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 9**

      1.      <u>Cruz has no evidence that T-Mobile always engages in lesser discipline before a dismissal</u>.

As noted, Cruz claims in this lawsuit that T-Mobile fired him due to his color and national origin. App. 4-5. He testified that the basis for that claim is his belief that T-Mobile has an unwritten policy of always giving a second chance to employees who engage in misconduct, but that he did not get a second chance when his Las Vegas misconduct came to light. App. 5-7.

As an initial matter, Cruz has no evidence that T-Mobile always gives misbehaving employees a second chance. Not surprisingly, like the vast majority of employers, there are acts of misconduct for which T-Mobile absolutely does fire employees without providing a second chance. App. 133. Indeed, when pressed at his deposition, Cruz admitted it is "possible" that T-Mobile might actually move directly to dismissal if an employee's misconduct was sufficiently serious. App. 7-8. Moreover, he admits that he has no evidence of Beardsley or Nolan, or anyone else involved in the termination decision, giving second chances to other employees before disciplining them. App. 9-10, 82. Cruz therefore cannot establish for purposes of this motion that a mandatory-second-chance policy was in place at T-Mobile, either generally or with respect to his direct chain of command, during the relevant period.

More importantly, even if such a policy existed, it would not help Cruz' discrimination claim, because he contends that T-Mobile gave other people of his race and national origin the benefit of this supposed unwritten policy. App. 14, 81-82. The fact that (according to Cruz) <u>everyone</u>, regardless of color or national origin, got preferential treatment to him under this supposed policy means that he necessarily cannot rely on it as evidence of discrimination.

      2.      <u>Cruz has no evidence that Beardsley or Nolan discriminated against him.</u>

Cruz further testified that he believes that Beardsley and Nolan acted with an intent to discriminate against him. App. 8. But he acknowledges that they supervised others of his national origin, and has no evidence that they ever discriminated against any of those employees. App. 8.

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 10**

Instead, he claims that Beardsley and Nolan discriminated against him based wholly on his opinion that they came to the wrong conclusion about whether he engaged in inappropriate behavior in Las Vegas. App. 69, 79.

But that is not evidence of discrimination at all. As the Court knows, employers need not make correct disciplinary decisions, just non-discriminatory ones.[18] Accordingly, Cruz's claim that he is innocent of the misconduct that multiple employees accused him does not constitute evidence of discrimination.[19]

    3.    <u>Cruz' belief that T-Mobile's investigation could have been more thorough is not evidence of causation.</u>

Cruz made a related argument at his deposition, which is that T-Mobile should have conducted an even more thorough investigation, such as by obtaining security footage from the stadium where the event was held. App. 15-16, 24-25. But this is just another way of arguing that T-Mobile came to the wrong conclusion. And courts are clear that an employee cannot avoid summary judgment by arguing "my employer got it wrong."[20]

---

[18] *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ( "[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones."); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."); *Jeffries v. Harris County Cmty. Action Assoc.*, 615 F.2d 1025, 1036 (5th Cir. 1980) ("[W]here an employer wrongly believes an employee has violated company policy, it does not discriminate in violation of Title VII if it acts on that belief."); *Nasti v. CIBA Specialty Chemicals Corp.*, No. CIV.A.H-04-04590, 2006 WL 6554166, at *7 (S.D. Tex. Feb. 1, 2006), *aff'd*, 492 F.3d 589 (5th Cir. 2007) ("The Fifth Circuit and other courts, however, have consistently held that such an inquiry into whether an employer's termination decision was correct is irrelevant to an employee's discrimination claim.").

[19] In any event, Cruz does not contend that Villagran and others lied about him because of his national origin or color. Instead, he testified to an ill-defined speculation that Villagran and the others might want to get rid of him to limit the amount of people they might have to compete against for future promotions, and/or that they had professional jealousy or disagreement with the way Cruz wanted to do things in his new role. App. 44-45, 53-58, 60-61, 62, 64-67.

[20] *Bryant*, 413 F.3d at 478; *Little*, 924 F.2d at 97; *Jeffries*, 615 F.2d at 1036; *Nasti*, 2006 WL 6554166 at *7.

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 11**

    4.    <u>Cruz has no evidence of similarly situated employees who were treated better than him.</u>

Cruz may argue that Nolan treated another employee, Will Quijano, more favorably than him. App. 10-11. But for Nolan's treatment of Quijano to be relevant, he and Cruz must be similarly situated, which means Cruz must show that he and Quijano were "nearly identical" in all relevant respects.[21] But they plainly were not.

For example, Quijano and Cruz held different positions at the time each was accused of misconduct, a fact that by itself means they are not similarly situated.[22] App. 129, 133. In addition, whereas Cruz was accused of misconduct at a T-Mobile event by T-Mobile employees, Quijano was accused of off-duty misconduct by someone who was not an employee. App. 129. Similarly, whereas Cruz was accused of behaving inappropriately towards other T-Mobile employees, Quijano was accused of behaving inappropriately towards a third party. App. 129. Moreover, Cruz' misconduct, but not Quijano's, was substantiated through T-Mobile's investigation. App. 128-29. These differences all mean that Cruz and Quijano therefore are not nearly identical and thus not similarly situated.[23]

The same is true for another employee Cruz mentioned at his deposition as a potential

---

[21] *See, e.g., Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been nearly identical.") (internal quotation omitted); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) ("In discrimination cases, we compare the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff"); *Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) ("[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees.") (internal quotations and alterations omitted); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735–36 (S.D. Tex. 2014) (explaining that "similarly situated employees are employees who are treated more favorably in nearly identical circumstances; the Fifth Circuit defines similarly situated narrowly. Similarly situated individuals must be nearly identical and must fall outside the plaintiff's protective class. Where different decision makers or supervisors are involved, their decisions are rarely similarly situated in relevant ways for establishing a prima facie case.") (internal quotations and citations omitted).

[22] *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 285 (5th Cir. 2015) (concluding that employees were not similarly situated where, among other things, they "held different positions"); *Cyprow v. Texas Dep't of Pub. Safety,*

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 12**

comparator, Javier Hillis. App. 12, 17. Cruz alleges that Hillis was "belligerent" to a manager. App. 12. Because Hillis and Cruz were not accused of engaging in the same misconduct, they are not similarly situated.[24] They are not similarly situated for the additional reason that they reported to different persons.[25] App. 13. More importantly, Hillis, like Cruz, is Hispanic. App. 133. T-Mobile's treatment of Hillis therefore <u>undermines</u> rather than helps, Cruz's discrimination claim.

Cruz also made general allegations about "white and black" employees that he claims he saw engaging in "questionable behavior" during the Las Vegas event, like "dancing very provocatively." App. 18-19. Although Cruz agrees that T-Mobile's policies require employees to report violations of the harassment and discrimination policy, and that he would have reported anyone he saw violating those policies, he did not report any of these alleged acts. App. 30-32, 130. It therefore is unclear whether Cruz actually saw any behavior that violated T-Mobile's policies. But assuming for purposes of this motion that he did, Cruz admits that he does not know if anyone complained about those persons. App. 19. Moreover, he does not know if those persons, or anyone else, received discipline as a result of their behavior at the Las Vegas event. App. 19-20. Without such evidence, and without demonstrating that any of these "white and black" employees was similarly situated to him, any arguments he may make based on their alleged behavior has no bearing on his discrimination claim.

---

No. CIV.A.H-07-3045, 2009 WL 1743826, at *20 (S.D. Tex. June 17, 2009), *aff'd sub nom. Cyprow v. Tex. Dep't of Pub. Safety*, 371 F. App'x 522 (5th Cir. 2010) (same).

[23] *Perez*, 395 F.3d at 213 (5th Cir. 2004); *Okoye*, 245 F.3d at 514; *Agoh*, 992 F. Supp. 2d at 735–36.

[24] *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (concluding that employees who engaged in different misconduct were not similarly situated.); *Vargas v. Texas A & M Univ.*, No. CIV.A. H-05-02797, 2007 WL 150484, *4 (S.D. Tex. Jan. 16, 2007) (explaining that comparators "must" among other things "be those employees . . . who committed the same infractions or violations of company policy" as plaintiff).

[25] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (concluding that employees whose actions were reviewed by different supervisors were not similar situated); *Vargas v. Texas A & M Univ.*, No. CIV.A. H-05-02797, 2007 WL 150484, *4 (S.D. Tex. Jan. 16, 2007) (explaining that comparators "must" among other things "be those employees who had the same supervisor" as plaintiff).

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 13**

5. <u>Cruz' anticipated argument regarding a former HR Representative is irrelevant.</u>

Cruz may also present evidence from a former HR Representative named Isabel Torres which indicates that a T-Mobile call center where she and he previously worked had a general practice of providing multiple corrective opportunities before proceeding to employment termination. *See generally* App. 72-77. That evidence would be irrelevant for purposes of this motion because Cruz admits that Torres had no role in group Cruz had just moved to. App. 105. She therefore would not have any basis for stating whether that new group had a practice of giving multiple chances before firing someone, and her recollection of what a different T-Mobile work group generally did thus has no bearing on the issue before the Court.

#       #       #

In short, Cruz has no evidence of the causation element of his prima facie case. Accordingly, his claim fails as a matter of law, and T-Mobile is entitled to judgment in its favor.

**C.      Cruz Cannot Establish Pretext**

There is another reason why Cruz' claim fails: even if he could establish a prima facie case of discrimination based on his firing, he cannot rebut T-Mobile's legitimate, non-discriminatory reason for its decision, namely that it believed he had engaged in unacceptable behavior during and after the Las Vegas event.[26] App. 128-29.

As noted, Cruz' case turns on his belief that the company should have issued lesser discipline and/or come to a different conclusion regarding the allegations against him. But employment laws do "not allow a court to sit as a super-personnel department and micromanage a company's business decisions."[27] Because Cruz has no evidence that T-Mobile intentionally discriminated against him on the basis of his color or national origin, he cannot establish pretext.

---

[26] *Reeves*, 530 U.S. at 142-43.

[27] *Dubaz v. Johnson Controls World Servs.*, 163 F.3d 1357, *1 (5th Cir. 1998).

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 14**

That is particularly true in light of the ample evidence which demonstrates that such discrimination <u>did not</u> occur.[28] First, the same person—Mark Nolan—made the decision to hire and then fire Cruz within a matter of weeks. App. 128-29. And the case law is clear that where the same person hires and then fires someone shortly thereafter, a presumption exists that the firing decision could not have been discriminatory.[29]

Second, as noted above, T-Mobile went above and beyond to minimize the impact of its decision to fire Cruz, first by extending his official termination date to ensure he would not lose out on soon-to-vest stock awards, and so that he could have an additional month of benefits, and second by voluntarily extending his benefits for several additional months. App. 132. The Company clearly would not have taken these steps if it held a discriminatory bias against Cruz.

Third, and finally, the person who took over Cruz' duties following his firing was, like him, Hispanic. App. 132. That is additional evidence that T-Mobile's stated explanation was not pretext for unlawful color or national origin discrimination.[30]

---

[28] *See, e.g. Reeves*, 530 U.S. at 148-49 (explaining that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. . . . Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.").

[29] *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) ("From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job") (internal quotation, citation, and alteration omitted); *see also O'Brien v. Lucas Assocs. Pers., Inc.*, 127 Fed. Appx. 702, 707 (5th Cir. 2005) ("O'Brien's attempt to [demonstrate discrimination] is further frustrated by <u>the anti-animus presumption</u> that arises when the decisions to hire and fire an employee are made by the same person.") (emphasis added); *Cartagena v. Aegis Mortgage Corp.*, 275 F.3d 46 (5th Cir. 2001) ("[W]e must consider Cartagena's evidence in light of the fact that the same individual . . . both hired and discharged Cartagena. Such circumstances create an inference that discrimination was not the employer's motive in terminating the employee.") (internal quotation and citation omitted).

[30] *See, e.g., Moore v. Duncanville Indep. Sch. Dist.*, 358 F. App'x 515, 517 (5th Cir. 2009) ("As Moore admits, his replacement was, like him, of Hispanic national origin and was therefore not 'outside of the protected class.' Moore has presented no evidence which would challenge the district court's finding."); *Levins v. Criterion Supply, Inc.*, No. CV H-18-1275, 2019 WL 6716027, at *5 (S.D. Tex. Dec. 10, 2019) (holding that plaintiff did not establish a prima facie case, in part because she had "not presented evidence that she was replaced by someone outside her protected

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 15**

In the end, all Cruz has is his subjective belief that T-Mobile fired him due to his color and national origin. But his subjective belief, even if genuinely held, does not suffice.[31] As such, T-Mobile is entitled to judgment in its favor.

## V. CONCLUSION

When faced with multiple employees who reported that a new leader made them uncomfortable at a work event, T-Mobile investigated and made an easily understandable decision: it fired the new leader. Cruz may not like that decision, but he certainly has no evidence that it was made because of his color or national origin. Accordingly, T-Mobile respectfully requests that the Court grant its motion, dismiss Cruz' claims with prejudice, and award T-Mobile its costs.

Dated: November 18, 2022.

---

category" and instead the company produced evidence that her replacement was someone in her same protected category).

[31] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") (citing cases).

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 16**

/s/Micah R. Prude
Micah R. Prude, Attorney-in-Charge
   State Bar No. 24051216
   Southern District No. 1198487

OF COUNSEL:

Catherine J. Barbaree
   State Bar No. 24098962
   Southern District No. 3242838

HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751
E-mail: micah.prude@hklaw.com
E-mail: catherine.barbaree@hklaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, a true and correct copy of the foregoing was served on plaintiff's counsel of record via the Notice of Electronic Filing automatically generated by this Court's ECF system.

/s/Micah R. Prude
Micah R. Prude

#180482309_v2

**DEFENDANT T-MOBILE'S MOTION FOR SUMMARY JUDGMENT – Page 17**