IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ARTURO CRUZ | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:22-cv-00090 |
| | § | |
| T-MOBILE USA, INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT T-MOBILE'S**
**<u>REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Defendant T-Mobile USA, Inc. ("T-Mobile") submits this reply in support of its motion for summary judgment on all of the claims asserted by Arturo Cruz.

TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT AND AUTHORITY ........................................................................... 1

    A.   Cruz Failed to Establish the Causation Element of His Prima Facie Case ............. 1

        1.   Cruz' Petition is Not Evidence. ................................................................. 2

        2.   Cruz' Deposition Transcript is Not Properly Before the Court, and Does Not Identify Relevant Comparators in Any Event. ........................... 2

        3.   Cruz' Affidavit Fails to Establish Appropriate Comparators as a Matter of Law. .......................................................................................... 3

        4.   Cruz Cannot Demonstrate Causation Merely by Establishing That a White Person Complained About Him. ................................................... 7

    B.   Cruz Failed to Establish Pretext ............................................................................. 8

        1.   Cruz' Claims Regarding An Alleged "Mandatory Second Chance" Policy are Unsupported and Irrelevant in Any Event. ............................... 8

        2.   Cruz' Claims Regarding a HR Representative's Alleged Reaction to His Firing Do Not Establish Pretext. ..................................................... 10

        3.   Cruz' Testimony About an Alleged Statement by Mark Nolan Does Not Establish Pretext. ..................................................................... 11

        4.   Cruz' Other Attempts to Establish Pretext Fail as a Matter of Law. ........ 14

        5.   Cruz Fails to Address the Overwhelming Evidence That Discrimination Did Not Occur. ................................................................. 16

III. CONCLUSION .......................................................................................................... 17

## I. INTRODUCTION

In his four-page response to T-Mobile's summary-judgment motion,[1] Cruz does not seriously address any of the arguments T-Mobile made, nor does he make substantive legal arguments in favor of his position. For example, other than three cases discussing the standards generally applicable to his discrimination claim and T-Mobile's motion, Cruz does not cite or discuss any caselaw in support of his position. He likewise does not cite any evidence in support of his claim, save a single cite to one page of his deposition. Instead, Cruz simply asks the Court to review his pleading (which is not evidence), the entirety of his deposition (which exceeds 300 pages), and his affidavit (which contains hearsay and sham statements as discussed below) to find something that might salvage his unfounded discrimination claim at this late date. That approach is wholly insufficient, because Cruz has an affirmative burden to direct the Court to <u>actual evidence</u> to support his claims.[2] His failure to do so entitles T-Mobile to summary judgment.

## II. ARGUMENT AND AUTHORITY

### A. Cruz Failed to Establish the Causation Element of His Prima Facie Case

In its motion, T-Mobile explained that Cruz cannot establish a genuine issue of material fact as to the causation element of his prima facie case. Motion § IV.B. In response, Cruz correctly notes that it is his burden to establish, as part of his prima-facie case, that that T-Mobile "gave preferential treatment to a similarly situated employee who is not in the protected class under

---

[1] Cruz captions his brief as being a response to a "no-evidence" summary judgment motion, and opens his brief by discussing standards applicable to such a motion. Response at 1. A "no-evidence" motion is one contemplated by the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a(i). But T-Mobile moved under Federal Rule of Civil Procedure 56, not the Texas no-evidence rule. As such, the Court should apply the standards set out in T-Mobile's motion under Rule 56, and not those that might have applied if T-Mobile had filed a no-evidence motion in state court.

[2] *See, e.g., Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."); *Grimes v. Texas Dept. of Mental Health and Mental*, 102 F.3d 137, 140 (5th Cir. 1996) ("[I]t is therefore incumbent upon the non-moving party to present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff on the basis of her race") (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) (en banc)).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 1**

nearly identical circumstances." Response at 2.[3] But despite recognizing his burden on this issue, Cruz fails to present the Court with evidence of (1) similarly situated comparators who (2) are not in his protected class and who (3) were treated better than him (4) under nearly identical circumstances.

1. <u>Cruz' Petition is Not Evidence</u>.

When discussing his prima-facie burden, Cruz tells the Court that his petition in this case is evidence that similarly situated comparators who are not in his protected class were treated better than him under nearly identical circumstances. Response at 3. But it has long been the rule in this Circuit that "pleadings are not summary judgment evidence."[4] Accordingly, Cruz cannot rely on his petition to satisfy his burden of producing evidence that there is a genuine issue for trial.

2. <u>Cruz' Deposition Transcript is Not Properly Before the Court, and Does Not Identify Relevant Comparators in Any Event</u>.

Cruz likewise tells the Court that that it should scour his entire deposition transcript and find for itself evidence of relevant comparators outside his protected category who were treated better under nearly identical circumstances. Response at 3. But as noted, Cruz had the burden of directing the Court to <u>specific evidence</u> in support of his claims.[5] It is wholly improper for Cruz to instead ask the Court to read the entirety of his 300+ page deposition to find supporting evidence for itself, because "[j]udges are not like pigs, hunting for truffles buried in the record."[6]

Put differently "Rule 56 does not impose upon the district court a duty to sift through the

---

[3] Although courts have sometimes applied different standards for this element of a plaintiff's prima-facie case, Cruz does not mention or argue that he has satisfied such other standards. Instead, he relies solely on alleged similarly situated employees. Response at 3 ("Plaintiff, Cruz, met his prima facie burden of providing evidence that he was treated less favorably than other similarly situated employees.").

[4] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

[5] *See, e.g., Reeves*, 530 U.S. at 143; *Grimes*, 102 F.3d at 140.

[6] *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (internal quotation and citation omitted).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 2**

record in search of evidence to support a party's opposition to summary judgment."[7] As such, even if Cruz' deposition contained evidence of similarly situated employees outside his protected class who were treated better than him under nearly identical circumstances, that evidence is not before the Court because Cruz failed to identify that evidence in his response.[8]

And even if the Court were inclined to undertake the responsibility of reading all of Cruz' deposition to search for evidence of similarly situated employees outside Cruz' protected categories who were treated more favorably than him under nearly identical circumstances, it would find none, as T-Mobile has already explained in its motion. *See* Motion at § IV.B.4. Cruz' deposition testimony therefore does not meet his burden of establishing this element of his prima facie case.

   3. <u>Cruz' Affidavit Fails to Establish Appropriate Comparators as a Matter of Law</u>.

Cruz also submits an affidavit in which he identifies certain employees whom he claims are relevant comparators. None are, because Cruz presents no evidence that anyone he identifies (1) is outside his protected categories (*i.e.*, is a different color or national origin than him), (2) was similarly situated to him as that term is defined by applicable caselaw, (3) was treated better than him, and (4) was so treated under nearly identical circumstances.

Specifically, Cruz says that he saw "several people especially women dancing provocatively" in Las Vegas and that "there was a lot of heavy drinking, slurring, hugging, touching each other." Docket No. 15-1 at 2. But Cruz provides no information about the color or national origin of these "several people," so he necessarily cannot use them as comparators for

---

[7] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal quotation and citation omitted).

[8] *Id.* ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 3**

purposes of his color and national origin discrimination claims,[9] because the entire point of the similarly-situated-employee analysis is that when two employees are treated differently and the only meaningful difference between their circumstances is their protected category, a jury could conclude that the protected category accounts for the difference in treatment. And without evidence that these people were a different color or national origin than him, Cruz cannot point to their treatment as evidence of disparate treatment <u>because of</u> his color or national origin.

Moreover, even if he <u>had</u> presented evidence that the people he saw "dancing provocatively" were of another race or color than him, he makes no attempt at all to demonstrate that they are similarly situated to him, which generally requires a showing that they (among other things) reported to the same supervisor and had the same job title and duties as him. *See, e.g.*, Motion at § IV.B.4.

Nor did he present any evidence that these unidentified people were treated differently than him. Instead, he says only that "to his knowledge" none of the behavior he saw was "addressed." But Cruz has the burden of providing actual evidence that these people were treated differently than him if he wants to use them as comparators. Simply saying "I am not aware of any such discipline" is not evidence of anything, much less that these people were in fact not disciplined (*i.e.*, that they were treated differently than him). That especially true given his testimony that there were "[a]bout 100" people at the event, that those people worked throughout the country, and that he was only employed by the company for about a week after the event. App. 19-20. In other words, this is not a situation where Cruz has established that, if discipline had occurred, he would have known about it. He therefore fails to present evidence that, if believed by a jury, would

---

[9] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("We have held that in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee <u>not within her protected class</u> whom the company retained.") (emphasis added, alterations omitted).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 4**

establish that the unnamed "other people" in fact were not disciplined.

Finally, Cruz presented no evidence that the circumstances of his misconduct on the one hand, and the actions of the "several people" he saw in Las Vegas on the other, were "nearly identical." For example, he does not allege, much less identify evidence suggesting, that anyone complained about or was made to feel uncomfortable by the behavior of these anonymous persons, as was the case for him.[10] Nor does he identify evidence establishing that any of those people subsequently failed to take responsibility for their actions when confronted as he did.[11] The circumstances of these unidentified people therefore are not "nearly identical" to Cruz' circumstances.

In short, although Cruz now says he saw people engaging in conduct in Las Vegas that he takes issue with, he presents no evidence that they were outside his protected categories, that they were similarly situated to him, that they were treated better than him, or that they were so treated under nearly identical circumstances. Any one of these deficiencies is enough to render Cruz' comparator argument regarding these persons to be insufficient as a matter of law.[12] Cruz therefore cannot rely on T-Mobile's alleged treatment of those persons to establish the causation element of his discrimination claim.

---

[10] *See, e.g., Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) ("Appellant cannot show that Langdon's conduct was nearly identical because no formal complaint of gender discrimination was filed against Langdon. Thus, as the district court concluded, Appellant's treatment cannot be compared with that of Langdon.").

[11] *See, e.g., Hill v. Napolitano*, 2011 WL 1337606, at *5 (S.D. Tex. Apr. 7, 2011) (explaining that "an employee who admits misconduct immediately is in an entirely different situation than an employee who contests the misconduct" and that such employees therefore "are not similarly situated").

[12] *See, e.g., Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) ("[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees.") (internal quotations and alterations omitted); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735–36 (S.D. Tex. 2014) (explaining that "similarly situated employees are employees who are treated more favorably in nearly identical circumstances; the Fifth Circuit defines similarly situated narrowly. Similarly situated individuals must be nearly identical and must fall outside the plaintiff's protective class. Where different decision makers or supervisors are involved, their decisions are rarely similarly situated in relevant ways for establishing a prima facie case.") (internal quotations and citations omitted).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 5**

In addition to the unspecified people he claims he saw in Las Vegas, Cruz mentions two other alleged comparators by name in his affidavit: Abraham Bennett and Guadalupe Ramos. But the same problems exist for these alleged comparators as exists for the unidentified Las Vegas comparators. For example, Cruz fails to even allege that these individuals are of another color or national origin than him. They therefore necessarily cannot be used as comparators to establish discrimination for the reasons just discussed. Moreover, Cruz does not present evidence that either had the same job title as him, that they reported to the same supervisor as him, or that their discipline was decided by the same decisionmaker. They therefore are not "similarly situated" to him.[13] And the misconduct that Cruz says they engaged in (unspecified "harassment" and unspecified acts of "sexual harassment") are not "nearly identical" to the misconduct he committed, namely making several coworkers (including those he would soon be supervising and/or traveling internationally with) uncomfortable through his behaviors at a work event <u>and</u> subsequently failing to take responsibility for his actions.[14] Bennett and Ramos therefore are not appropriate comparators as a matter of law.[15]

Finally, Cruz's affidavit mentions two employees addressed in T-Mobile's opening brief, Will Quijano and Javier Hillis. Docket No. 15-1 at 3-4. But as T-Mobile previously explained, Quijano is not similarly situated to Cruz because they held different positions, and were accused of significantly different misconduct (complaints at a work event by coworkers in the case of Cruz,

---

[13] *See, e.g., Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002); *Okoye*, 245 F.3d at 514; *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Agoh v*, 992 F. Supp. 2d at 735–36.

[14] *See, e.g., Hill*, 2011 WL 1337606 at *5.

[15] *See, e.g., Perez*, 395 F.3d at 213; *Sandstad*, 309 F.3d at 901; *Okoye*, 245 F.3d at 514; *Smith*, 891 F.2d at 1180; *Little*, 924 F.2d at 97; *Agoh v*, 992 F. Supp. 2d at 735–36.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 6**

and complaints by a non-employee about off-duty behavior in the case of Quijano). Motion at § IV.B.4. Similarly, Hillis' misconduct, which Cruz describes as yelling, intimidating, and cursing at a supervisor, was not "nearly identical" to Cruz' misconduct, and therefore cannot be used for comparison purposes.[16] In addition, as T-Mobile previously explained, Hillis and Cruz reported to different supervisors, App. 13, which means they are not similarly situated in any event.[17] More importantly, Hillis, like Cruz, is Hispanic, App. 133, a fact that demonstrates that the alleged difference in treatment between Cruz and Hillis necessarily could not have been motivated by Cruz' color or national origin. Cruz' failure to address any of these facts regarding Quijano and Hillis in his response is telling, and each is sufficient to establish that Quijano and Hillis are not appropriate comparators as a matter of law.

In short, Cruz' attempt to establish his prima facie case through comparators fails because he does not identify anyone outside his protected categories who suffices as a comparator under applicable Fifth Circuit law, and who was treated better than him under nearly identical circumstances.

    4. <u>Cruz Cannot Demonstrate Causation Merely by Establishing That a White Person Complained About Him</u>.

When discussing his prima facie case, Cruz makes a passing reference to the fact that "the reason why he was being investigated for misconduct in the first place dealt with a white female potentially complaining about Cruz." It is unclear whether Cruz is alleging that he can demonstrate causation simply by noting that one person who complained about his misconduct was a different color than him. To the extent that he intended to do so, he cites no cases for this proposition, and

---

[16] *See, e.g., Smith*, 891 F.2d at 1180 (concluding that employees who engaged in different misconduct were not similarly situated.).

[17] *See, e.g., Little*, 924 F.2d at 97 (concluding that employees whose actions were reviewed by different supervisors were not similar situated).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 7**

T-Mobile is aware of none. To the contrary, it would be a perversion of the very law Cruz relies on, which seeks to ensure that all employees are treated equally regardless of color, to adopt a rule that an employee's complaint about a coworker should be viewed as suspect or as evidence of unlawful discrimination simply because the two employees are different colors. The Court should decline to implement such a rule.

#     #     #

Because Cruz has not satisfied his burden of presenting evidence of the causation element of his prima facie case, T-Mobile is entitled to summary judgment.

**B.     Cruz Failed to Establish Pretext**

Cruz agrees (as he must) that if he establishes a prima facie case and T-Mobile presents a legitimate, nondiscriminatory reason for its actions, the burden shifts back to him to show that the reasons T-Mobile offered were not its true reasons, but were a mere pretext for discrimination.[18] Response at 2. He fails, however, to present evidence of any such pretext.

    1.     <u>Cruz' Claims Regarding An Alleged "Mandatory Second Chance" Policy are Unsupported and Irrelevant in Any Event</u>.

Cruz attempts to demonstrate pretext by claiming that T-Mobile's treatment of him "was not in line with the way T-Mobile has dealt with anyone" because the company "almost always allowed the employee [who engaged in misconduct] to be reprimanded and trained, but never summarily terminated." Response at 3. In support of this remarkable claim that there is nothing a T-Mobile employee can do that would result in his or her immediate firing, Cruz cites just a single page from his deposition. *Id*. But T-Mobile already addressed why that deposition testimony does

---

[18] Cruz also references the mixed-motive approach that is applicable in some circumstances. Response at 2. But he does not seek to apply that approach here. In other words, he does not contend that T-Mobile's stated explanation is true, but that an <u>additional</u> discriminatory reason existed for T-Mobile's decision to fire him. Instead, he focuses solely on the argument that T-Mobile's stated explanation is false. As such, T-Mobile will continue to analyze Cruz' claims through the pretext analysis.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 8**

not create a fact issue sufficient to preclude summary judgment, including Cruz' admission elsewhere in his deposition that it is "possible" that T-Mobile might actually move directly to dismissal if an employee's misconduct was sufficiently serious (*i.e.*, his admission that the alleged mandatory policy was not in fact mandatory in all circumstances), App. 7-8, and more importantly that he admits that he has no evidence at all that Nolan (the decisionmaker) followed this alleged unwritten policy of giving second chances to other employees before disciplining them. App. 9-10, 82.

Regarding the former, Cruz now concedes in his response that the alleged second-chance policy was not absolute, claiming instead that it "almost always" applied. Response at 3. And, as addressed above in the context of Cruz' comparator arguments, he fails to present any evidence that this alleged policy was ever applied to the circumstances at issue here (*i.e.*, where an employee engages in behaviors that make his new coworkers and other uncomfortable, where those persons complaint, and where the employee fails to take responsibility for his actions). That is true notwithstanding Cruz' allegation that at a banquet in 2019, when he worked in a different part of the company, unspecified people "g[ot] a bit too intoxicated" at a work event and were sent home in a cab or rideshare. Docket No. 15-1 at 2. To state the obvious, the problem with Cruz' behavior in Las Vegas and thereafter was not that Cruz "got a bit too intoxicated," but that he engaged in behaviors that made others uncomfortable and then failed to take accountability for his actions. As such, Cruz's allegations regarding the 2019 banquet are irrelevant, and he has no other evidence demonstrating a general policy at T-Mobile that, if applied, would have required T-Mobile to try lesser discipline before firing him.

And Cruz does not address the latter at all (*i.e.*, that there is no evidence of Nolan always or even routinely giving second chances), a failure that is fatal to his discrimination claim. Without evidence of the <u>existence</u> of a policy or practice by Nolan to always (or very often) give second

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 9**

chances to misbehaving employees, Cruz necessarily cannot establish a <u>deviation</u> from that practice or policy of the sort that can be sufficient to establish pretext. In other words, the onus was on Cruz to present evidence by which a jury could conclude that (1) Nolan always, or almost always, gave second chances to misbehaving employees, (2) Nolan did not give Cruz a second chance, and (3) Nolan's failure to follow his own practice or policy was because of unlawful color or national-origin discrimination. But he presented no such evidence, which is not surprising because none exists.

There is a second problem, beyond the lack of any evidence to support the existence of a second-chance policy that should have applied here, with Cruz's argument. As noted in T-Mobile's motion, Cruz testified that T-Mobile gave other people <u>of his race and national origin</u> the benefit of this supposed unwritten policy. App. 14, 81-82. Perhaps after belatedly realizing that this fact means that he necessarily cannot rely on the supposed policy as evidence of discrimination, Cruz states in his response that policy was "especially [applied to] people of white color." Response at 3. Cruz does not address the obvious discrepancy between his claim that T-Mobile always or "almost always" applied this policy to <u>all</u> of his coworkers and his claim that T-Mobile "especially" applied this policy to his white coworkers, and in any event presents no evidence at all that T-Mobile only or disproportionately applied this supposed policy to people outside his protected categories. As such, even if Cruz had presented evidence of such a policy as a general matter, it would not help him establish that T-Mobile's alleged deviation from it was motivated by his color or national origin.

    2.    <u>Cruz' Claims Regarding a HR Representative's Alleged Reaction to His Firing Do Not Establish Pretext</u>.

Cruz also attempts to demonstrate pretext by stating in a conclusory manner that an HR representative name Isabel Torres "was very surprised" that the company fired Cruz. Response at 3. He slightly elaborates on this claim in his affidavit, where he says that Torres was surprised

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 10**

because "to her there was no discussion to separate [him] but to hold [him] accountable and address the behavior since there was and never has been a record of this behavior from [him]."[19] Docket No. 15-1 at 3.

Even if the Court were to credit Cruz' statement as constituting sufficient evidence about what Torres felt and why she felt that way, her general surprise about Cruz's firing is not relevant to any issue before the Court. In particular, Cruz presents no evidence that Torres believed that Cruz was fired because of his color or national origin, or that she believed the actual decisionmaker (Nolan) was not being truthful when stating the reasons for Cruz' firing. Her apparent surprise at Nolan's decision therefore is not evidence that Nolan is lying about the reason for his decision to fire Cruz.

    3.    <u>Cruz' Testimony About an Alleged Statement by Mark Nolan Does Not Establish Pretext</u>.

Cruz also attempts to demonstrate pretext by claiming that he had a conversation with Nolan where Nolan allegedly said that "he did not believe that what went down warranted separation. . . ." Response at 3-4; Docket No 15-1 at 4. It unclear exactly what Cruz is referring to by the phrase "what went down," but he seems to be saying that Nolan told him that what happened in Las Vegas (*i.e.*, Cruz' inappropriate actions towards his coworkers), by itself, was not enough to warrant dismissal. For example, that is consistent with what he told the TWC, namely that he was told that he was being fired due to his conduct in Las Vegas <u>and subsequent failure to take responsibility for his actions</u>:

> What were you accused of? I was accused of misconduct while at a company sponsored event. **From what was explained to me by Mark Nolan VP of T-Mobile was that what I was accused of he didn't believe it was enough to separate me but because I failed to take ownership of the accusations, they couldn't trust me in my role**.

---

[19] Cruz also references an email that Torres sent him about this issue, but does not provide a copy of the email. It therefore is not before the Court and cannot be considered for purposes of T-Mobile's motion. *See generally Malacara*, 353 F.3d at 405.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 11**

App. 121 (emphasis added); *see also* App 119 (stating that he was separated "not because of the issues on the event but because I denied the accusations against me."); App 124 (stating that he was "terminated because [he] did not take ownership of [his] actions"); Docket No 15-1 (stating that at the dismissal meeting "[t]he reason they gave was because I showed no remorse. . . .").

If this is what Cruz is referring to when he discusses Nolan's alleged statement, it is not evidence of pretext because, as Cruz' own statements demonstrate, he has consistently been told that his firing was not just because of his actions in Las Vegas, but also because of his failure to take responsibility for those actions when later confronted about them. Indeed the declaration Nolan submitted said just that. App. 129 ("Mr. Cruz' actions at and following the Las Vegas event caused me to lose trust in his ability to continue as a leader at T-Mobile. . . . Accordingly, I made the decision to terminate Mr. Cruz' employment."). Cruz therefore has not identified any conflicting or shifting explanations that could constitute evidence of pretext.

Alternatively, to the extent Cruz is alleging that Nolan told him that neither the event activity <u>nor</u> the subsequent lack of accountability was sufficient to warrant dismissal, his only evidence of that alleged statement is his own affidavit. But "[i]t is well settled that [the Fifth Circuit] does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."[20] This prohibition, known as the "sham affidavit" doctrine, means that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."[21] The reason for this rule is self-evident: "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of

---

[20] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).

[21] *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 12**

summary judgment as a procedure for screening out sham issues of fact."[22]

That doctrine is directly applicable here if Cruz is, in fact, now claiming that Nolan told him that his firing was entirely unjustified, and that that statement is evidence of discrimination. Specifically, Cruz unambiguously testified at his deposition that his evidence of discrimination was <u>solely limited</u> to the company reaching the wrong conclusion and him not getting a second chance:

> Q: So I understand you correctly, your -- well, do you believe the company is lying when it says that it received complaints about your behavior that weekend?
> A: I don't believe the company is lying that they received complaints.
> Q: Just that if they had investigated it properly and taken everything into consideration, they could have or should have come to a different conclusion. Correct?
> A: Correct.
> Q: Was that a correct?
> A: Correct.
> Q: And is it your belief that -- **if we went back to that weekend and everything was the same except you were a different race and national origin, is it your position that you would have been allowed to keep your job at the company**?
> A: **Correct**.
> Q: And **that's for the reasons that we've discussed previously today**, which is that, you know, **the company came to the wrong conclusion and didn't give you a second chance like it has in other circumstances**. Is that correct?
> A: **Correct**.
> Q: Say again, please?
> A: Correct.
> Q: **Any other reason beyond those two things?**
> A: **No, sir.**

App 24-25 (emphasis added). He further testified that he has no reason to think Nolan was biased against his race or national origin, other than the fact that he came to an incorrect conclusion about Cruz' misconduct:

> Q: **Other than the fact that [Nolan] came to an incorrect conclusion**, do you have any reason to think that he is biased against people of your race and national origin?
>
> A: **Not that I can think of**.

---

[22] *Id.* (internal quotation and citation omitted).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 13**

App. 79 (emphasis added).

There is no way to reconcile this unambiguous testimony with Cruz' ambiguous new claim (to the extent he is making such a claim) that he can also show his firing was discriminatory not just by pointing to the alleged wrong conclusion and lack of a second chance, but <u>also</u> because Nolan supposedly told him that his actions did not warrant dismissal at all. That sort of dramatic about-face from his deposition testimony raised only in response to a summary-judgment motion is precisely what the sham-affidavit rule prohibits, especially since Cruz makes no attempt at all to explain or justify the discrepancy.[23] As such, the Court must disregard that aspect of Cruz' affidavit.[24]

    4.    <u>Cruz' Other Attempts to Establish Pretext Fail as a Matter of Law</u>.

Cruz makes two other passing statements and/or arguments in his response and affidavit regarding his firing. It is unclear whether he does so in an attempt to demonstrate pretext, but in any event, neither is sufficient to demonstrate a fact issue as to pretext.

First, Cruz notes that his direct supervisor and other leaders present at the Las Vegas event did not say anything to him about his behavior the evening in question, and seems to suggest that this proves that he did nothing wrong that night. Docket No. 15-1 at 2. But this is just another way of saying "I did not engage in misconduct" and/or "What I did was not that bad." And, as T-Mobile explained in its brief, Cruz cannot avoid summary judgment simply by claiming he is innocent, or by arguing that T-Mobile should have investigated and taken action more promptly. Motion at §§

---

[23] *See, e.g., Free v. Wal-Mart Louisiana, L.L.C.*, 815 F. App'x 765, 767 (5th Cir. 2020) ("Notably, courts typically require some explanation for an inconsistency between a deposition and affidavit.").

[24] *Id*. ("A court may, as the district court did here, strike an affidavit that, without explanation, conflicts with prior deposition testimony.").

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 14**

IV.B.2, IV.B.3, IV.C.[25]

In any event, there is no evidence that his direct supervisor or any other leader saw or became aware of Cruz' misconduct that evening. And, even if they had, Cruz fails to explain why it would be evidence of pretext for them to wait to address his misconduct until after the Las Vegas event ended and a full investigation had been conducted. This is not a retaliation case where an employer takes no issue with an employee's conduct until <u>after</u> the employee engages in protected activity, and the post-protected-activity change of heart therefore suggests a retaliatory motive. This is a color and national-origin discrimination case, and Cruz' leaders plainly knew his color and national origin before, during, and after the Las Vegas event. Accordingly, even if Cruz had established that leadership knew of his misconduct in Las Vegas but decided not to discipline him for that misconduct until he returned home and they had investigated the issue, that would not be evidence of pretext.

Second, Cruz claims that one of the people who reported his inappropriate behavior, Juan Longoria, later told him that he (Longoria) had spoken with one particular employee (who Cruz identifies as "Rachel Ross") in Las Vegas sometime during the night in question, and that Ross told Longoria that she believed "there was no issue at all with her." Docket No. 15-1 at 3. This allegation is hearsay (as to what Longoria allegedly told Cruz) and double hearsay (as to what Ross allegedly told Longoria that he then supposedly conveyed to Cruz) and therefore should be disregarded. FED. R. EVID. 802.

But even if the Court were to consider this allegation, it does not constitute evidence of pretext, because at most it shows that at some unspecified point on the evening in question, one

---

[25] *See also Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (explaining that a plaintiff's "assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating him.").

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 15**

particular employee told another that she had "no issue" with Cruz. That does not demonstrate that she did <u>later</u> experience conduct from Cruz that she <u>did</u> "take issue" with, or that T-Mobile did not later learn that Cruz took actions with respect to that employee and others that <u>it</u> "took issue" with. That is particularly true given Cruz' admission that he does not contend that the Company is lying when it says it received complaints about his actions in Las Vegas, App. 24, and his related admission in his affidavit that T-Mobile fired him because it "took the word a small group" that he engaged in misconduct. Docket No. 15-1 at 4.

Put differently, T-Mobile has consistently explained that it fired Cruz because it believed he engaged in unacceptable behavior during and after the Las Vegas event. *See, e.g.* App. 128-29. The fact that one particular employee allegedly told another at some point that night that she did not have an "issue" with Cruz in no way undermines or conflicts with that explanation. Accordingly, Ross's statement, if made, does not constitute evidence of pretext.

     5.    <u>Cruz Fails to Address the Overwhelming Evidence That Discrimination Did Not Occur</u>.

As T-Mobile explained in its motion, the Supreme Court has recognized that "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors[,]" including the "evidence that supports the employer's case."[26] And T-Mobile set out three examples of evidence demonstrating that its treatment of Cruz was not discriminatory, namely that the same person who decided to fire him had decided to hire him weeks earlier, that it took voluntary steps to minimize the impact of its decision to fire Cruz (*i.e.*, delaying his dismissal date to ensure that he did not lose soon-to-vest stock awards, and by gratuitously providing him with additional months of health insurance after his employment ended), and that the person who took over Cruz' duties following his firing was, like him, Hispanic. Motion at § IV.C. Especially

---

[26] *Reeves*, 530 U.S. at 148-49.

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 16**

in light of the exceedingly weak nature of his prima facie case (if the Court concludes that he established one), these facts matter.[27] Cruz cannot avoid their impact by refusing to acknowledge their existence.

### III. CONCLUSION

When faced with T-Mobile's motion that set out in detail why there is no triable issue of material fact in this case, Cruz opted to file a four-page response that is almost entirely devoid of caselaw, argument, or evidence. By doing so, Cruz has wholly failed to meet his burden of presenting evidence that, if believed, would allow a jury to find in his favor. Instead, Cruz simply suggests that, when presented with complaints of his inappropriate conduct by multiple employees and his own failure to take responsibility for that inappropriate conduct, he thinks T-Mobile should have taken some step short of dismissal. But because the law does not "allow a court to sit as a super-personnel department and micromanage a company's business decisions,"[28] this approach does not meet Cruz' summary-judgment burden, and T-Mobile therefore is entitled to summary judgment.

Dated: December 14, 2022.

---

[27] *Id.*

[28] *Dubaz v. Johnson Controls World Servs.*, 163 F.3d 1357, *1 (5th Cir. 1998).

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – Page 17**

/s/Micah R. Prude
Micah R. Prude, Attorney-in-Charge
   State Bar No. 24051216
   Southern District No. 1198487

OF COUNSEL:

Catherine J. Barbaree
   State Bar No. 24098962
   Southern District No. 3242838

HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751
E-mail: micah.prude@hklaw.com
E-mail: catherine.barbaree@hklaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, a true and correct copy of the foregoing was served on plaintiff's counsel of record via the Notice of Electronic Filing automatically generated by this Court's ECF system.

/s/Micah R. Prude
Micah R. Prude

#180482309_v2